## STATE OF FLORIDA v. GONZALEZ
Case No. 82-16157
Eleventh Judicial Circuit, Dade County, Criminal Division
December 2, 1982

David Wasman, for plaintiff.

Seymour L. Gaer, for defendant.

JOSEPH P. FARINA, Circuit Judge.

THIS CAUSE came on to be heard upon Defendant's Motions to Dismiss. An amended three count Information was filed against the Defendant, EGAR GONZALEZ, charging him with unlawful termination of pregnancy on a viable fetus, said termination not being necessary to save the life or preserve the health of a pregnant woman, aggravated battery, and manslaughter. After oral argument and careful consideration of all pleadings, the Court finds as follows:

## COUNT I: TERMINATION OF PREGNANCY
## §390.001(2)(10)

EGAR GONZALEZ is a physician licensed to practice medicine in the State of Florida. He is alleged to have performed a late termination of pregnancy on June 25, 1982, on a twelve year old black female, TEVRA EAFORD, in violation of Florida Statute §390.001(2). The State has charged DR. GONZALEZ with willfully terminating a pregnancy in the last trimester which was not necessary to save the life or preserve the health of the pregnant woman and which involved a viable fetus, a third degree felony under §390.001(10). Defendant argues that the statute seeks to regulate abortions beyond the limits found constitutional by the United States Supreme Court in *Roe v. Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), *Doe v. Bolton,* 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201 (1973), *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S. Ct. 2831, 49 L. Ed. 2d 788 (1976) and *Colautti v. Franklin,* 439 U.S. 379, 99 S. Ct. 675, 58 L.Ed. 2d 596 (1979); that it makes a person criminally liable for abortions performed after the 24th week of pregnancy without regard to whether or not the fetus is viable; that it fails to allow the attending physician to make the determination as to when the fetus is viable; that it denies the Defendant fair notice of what conduct could be constitutionally prohibited; and that the statute fails to provide a scienter requirement with respect to the finding of viability. A review of the language in *Roe* is essential to the resolution of this issue.

In its landmark decision of *Roe v. Wade, supra,* the United States Supreme Court held the right of privacy encompasses a woman's decision whether or not to terminate her pregnancy, that this right is not absolute and may to some extent be limited by the State's legitimate interests in safeguarding the woman's health, in maintaining proper medical standards, and in protecting potential human life. The Court summarized its findings as follows:

> "(a)   For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for preservation of the life or health of the mother." 410 U.S. at 164-165, 35 L. Ed. 2d at 183-184.

The Florida Legislature enacted a Medical Practice Act in 1979 which included a section (originally §458.505) entitled "Termination of pregnancies". The legislation *must* be viewed in its entirety to properly reflect the legislative intent inherent in the Act. At first blush, the Defendant's argument that §390.001(2) seeks to regulate abortions beyond the limits found constitutional in *Roe* is correct. §458.505(2) (now §390.001(2)) states, "No termination of pregnancy shall be performed on any human being in the last trimester of pregnancy unless:

(a) Two physicians certify in writing to the fact that, to a reasonable degree of medical probability, the termination of pregnancy is necessary to save the life or preserve the health of the pregnant woman; or

(b) The physician certifies in writing to the medical necessity for legitimate emergency medical procedures for termination of pregnancy in the last trimester, and another physician is not available for consultation."

The phrase "last trimester" exceeds constitutionally defined bounds because last trimester includes a period prior to viability and the State may only regulate abortions to promote its interest in the potentiality of human life subsequent to viability. However, this deficiency is overcome when the Act is read in its entirety, with particular emphasis given to §458.505(5) (now §390.001(5)).

If testimony at trial shows the fetus was not viable, then §390.001(2) is not applicable to the Defendant. If testimony shows the fetus was viable, the §390.001(2) and (5) must be proved to have been violated.

Viability is a matter of medical judgment, skill and technical ability. As the Supreme Court held in *Planned Parenthood of Central Missouri v. Danforth, supra:*

" . . . [I]t is not the proper function of the legislature or the courts to place viability, which essentially is a medical concept, at a specific point in the gestation period. The time when viability is achieved may vary with each pregnancy, and the determination of whether a particular fetus is viable is, and must be, a matter for the judgment of the responsible attending physician." 428 U.S. at 64, 49 L. Ed. 2d at 802.

The most recent affirmation of this position can be found in *Colautti v. Franklin, supra:*

"Viability is reached when, in the judgment of the attending physician on the particular facts of the case before him, there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support. Because this point may differ with each pregnancy, neither the legislature nor the courts may proclaim one of the elements entering into the ascertainment of viability — be it weeks of gestation or fetal weight or any other single factor — as the determinant of when the State has a compelling interest in the life or health of the fetus. Viability is the critical point. And we have recognized no attempt to stretch the point of viability one way or the other." 439 U.S. at 388-389, 58 L.Ed. 2d at 605.

Defendant further argues that the definition of *third* trimester found §390.011(6) makes all abortions performed after 24 weeks illegal. §390.011(6) reads "'Third trimester' means the weeks of pregnancy after the 24th week of pregnancy." The language is from a separate Act passed in 1978 regulating abortion clinics and begins its definition section "as used in this act:". Assuming *arguendo* the 1979 Legislature used this definition to control its deliberations in drafting §458.505(2), as stated previously, the language in §458.505(5) (now §390.001(5)) properly narrows the scope to constitutionally acceptable limits.

Trimester is a term of convenience. It was not used by the United States Supreme Court in the *Roe* or *Doe* decisions except for the stage prior to approximately the end of the first three months of pregnancy. Thereafter, the phrasing by the Court was "for the stage subsequent to approximately the end of the first trimester" and "for the stage subsequent to viability". A careful reading of §390.001(5) reveals a studious effort by the Florida Legislature to follow the guidelines of *Roe, Doe, Danforth* and *Colautti.* Therefore, it is the finding of this Court that Florida Statute §390.001(2) is not unconstitutional, to-wit: the Statute is applicable to post viability terminations of pregnancy. Further, a person is criminally liable only if the termination involves a viable fetus and is not necessary to save the life or preserve the health of the pregnant woman. The

attending physician has the skill, technical ability and capacity to judge whether a fetus is viable and has fair notice of what conduct is constitutionally prohibited. The State's contention that this Defendant lacks standing to raise these issues is without merit.

For the reasons set forth above, Defendant's Motion to Dismiss Count I is DENIED.

## COUNT II: AGGRAVATED BATTERY
### §784.045(1)(b)

DR. GONZALEZ is next charged with committing an aggravated battery upon TEVRA EAFORD during the performance of the June 25th abortion by intentionally touching or striking her against her will with a deadly weapon (metallic instruments) resulting in perforation and damage to her uterus and intestines, violating §784.045(1)(b).

An essential element of battery is that it be against the will of the victim. In the instant case, TEVRA EAFORD was a patient seeking assistance from physician-Defendant GONZALEZ in terminating her pregnancy via a surgical procedure.

Part of the patient-physician relationship involved the execution of a consent form by both TEVRA EAFORD, a minor, and DEANNE CASON, her mother. The consent form specifically stated, "I understand the possibility of perforation of the uterus and internal injuries resulting therefrom."

The touching of the victim occurred during the surgical procedure, was consented to, and the complications were foreseeable. If TEVRA EAFORD has a cause of action, it is in a civil case, not a criminal prosecution.

Defendant's Motion to Dismiss Count II of the Information is GRANTED.

## COUNT III: MANSLAUGHTER
### §782.07

The third Count of the Information charges DR. GONZALEZ with violation of Florida Statute §782.07 by inflicting on a female fetus wounds and injuries during the course of the June 25th abortion which resulted in death without justification, said killing not being excusable homicide or murder.

The heart of this issue is whether a fetus is a human being within the meaning of the Florida manslaughter statute.

At common law, the killing of a fetus was not homicide unless the child was born alive and then expired as a result of the injuries previously

sustained. The Supreme Court in *Roe, supra,* found that generally the unborn have never been recognized in the law as persons in the whole sense. Even when statutory classifications are carved out to extend rights to fetuses, there is a different standard of construction which must be applied when comparing criminal law with the law of tort or property.

Extensive reference has been made to the Florida Supreme Court statement in *Stern v. Miller,* 348 So. 2d 303 (1977) that "[a] viable fetus is a human being capable of independent existence outside the womb; a human life is therefore destroyed when a viable fetus is killed . . . " *Id.* at 306.The fact that this was a negligence suit seeking to extend Florida's Wrongful Death Act to include a fetus within the definition of "person" and that the Court ultimately declined to expand the definition to include a viable fetus is ignored. Rather, this Court is told to accept *Stern* as the current common law definition, to-wit: a viable fetus is a human being; further, that a fetus is now included under the Manslaughter Statute because the Florida Legislature re-enacted codifications of the Florida Statutes in both 1979 and 1981 and is presumed to know existing decisional law. The argument fails to consider the 1979 Legislature which enacted §390.001(10) making it a felony of the third degree to perform post viability abortions. The better reasoning is that the Legislature believes §390.001(10) and 782.09 (the current feticide statute) are adequate protections for the unborn. If it chooses to expand the protection, then it can specifically do so. California is a case in point. The legislature amended its murder statute, to-wit: "the unlawful killing of a human being, or a fetus, with malice aforethought." Florida could amend §782.07 to make manslaughter "the killing of a human being or viable fetus by the act, procurement or culpable negligence of another without lawful justification".

The Florida Legislature has indicated it is capable of distinguishing between an unborn child and a person born alive since it has enacted statutes which acknowledge this distinction. When we are concerned with a statute that is clearly penal in nature, it must be narrowly construed and the Defendant must be given the benefit of any reasonable doubt as to whether the act charged is within the meaning of the Statute. Evidence of great concern for viable fetuses (§390.001(5)) or implicit construction of *Stern v. Miller, supra,* as modifying the common law definition of human being to include viable fetuses cannot withstand judicial scrutiny nor constitutional muster.

Since "human being" is not defined in Florida Statutes and until the Florida Legislature specifically changes it, the common law definition controls. The fetus involved in this case was not born alive. The Motion to Dismiss Count III is GRANTED.